1  GREGORY L. BENTLEY #151147
   *gbentley@bentleymore.com*
2  MATTHEW W. CLARK #273950
   *mclark@bentleymore.com*
3  JAIMI M. GROOTHUIS #268602
   *jgroothuis@bentleymore.com*
4
5  BENTLEY & MORE LLP
6  4931 Birch Street
   Newport Beach, CA 92660
7  Phone:        (949) 870-3800
8  Facsimile:    (949) 732-6291
9
   *Attorneys for Plaintiff, Charlie's Gyros, Inc.*
10

11
12              **UNITED STATES DISTRICT COURT**
                **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13                      **SOUTHERN DIVISION**

14  CHARLIE'S GYROS, INC. (a California          Case No.:
15  corporation) on behalf of itself and all
    other similarly situated,                    **COMPLAINT (CLASS ACTION) AND**
16                                               **DEMAND FOR JURY TRIAL**
17              Plaintiff,
                                                 1. Strict Liability for Ultrahazardous
18      v.                                          Activities
19                                               2. Negligence
20  AMPLIFY ENERGY CORPORATION, a                3. Trespass
    Texas Corporation; BETA OPERATING            4. Private Nuisance
21  COMPANY LLC d/b/a BETA                       5. Public Nuisance
22  OFFSHORE, a Texas Corporation; SAN           6. Violations of California's Unfair
    PEDRO BAY PIPELINE COMPANY, a                   Competition Law (Cal. Bus. & Prof.
23  Texas Corporation,                              Code §§ 17200, *et seq.*)
24                                               7. Lost Profits and Earning Capacity
                Defendants.                         Damages (Federal Oil Pollution Act
25                                                  of 1990, §§ 1002, 1006)
26
27
28

Plaintiff, individually, and on behalf of a Class of others similarly situated, brings this class action lawsuit ("Complaint") against Defendants Amplify Energy Corporation ("Amplify"), Beta Operating Company LLC ("Beta"), and San Pedro Bay Pipeline Company ("San Pedro Bay").  Plaintiff alleges the following based upon personal knowledge, information, and belief, and upon the investigation of counsel as to all other facts alleged in the Complaint.

## I.  INTRODUCTION

1.      This action arises out of a massive crude oil release from an offshore oil pipeline in the Beta Field, which is an oil reservoir located in federal waters, about nine miles off the coast of Huntington Beach, California.  The oil pipeline, transporting oil from the Beta Field to a pump in Long Beach, California, began gushing oil just four miles from shore (the "Spill").

2.      The Spill originated from a ruptured pipeline (the "Pipeline") which connects to an offshore oil platform in the Beta Field named the Elly Platform ("Elly").  Elly is owned and operated by Beta, a subsidiary of Amplify.  The Pipeline is owned and operated by San Pedro Bay, also a subsidiary of Amplify.

3.      The oil release began on or about the evening of October 1 or the early morning of October 2, 2021, when Beta Offshore's 16-inch San Pedro Bay Pipeline ruptured.  This resulted in a release of crude oil into the San Pedro Bay, an inlet of the Pacific Ocean.[1]  As much as 131,000 gallons of oil has been spilled into the Pacific Ocean.  The full extent of the Spill is not currently known.

4.      Residents of the coastal city Huntington Beach, California first reported odors related to the Spill in the evening of October 1, 2021.  Soon after, in the early hours of Saturday, October 2, 2021, a large oil slick was visible in the Pacific less than five miles offshore, already wreaking havoc on marine life, dolphins, and boats.  By late Saturday night or early morning on Sunday, October 3, 2021, the oil began to wash

[1] Pipeline and Hazardous Materials Safety Administration, Office of Pipeline Safety Corrective Action Order issued October 4, 2021

BENTLEY & MORE LLP
TELLING YOUR STORY

1  ashore in Huntington Beach.  The spill continued drifting south along the California

2  coastline and vast amounts of oil are now washing ashore along the extended coastline

3  into Newport Beach, Laguna Beach, Dana Point and other beach cities, causing lasting

4  devastation to the coastal waters, beaches, wildlife, their delicate habitats, businesses,

5  residents and visitors up and down Orange County's coastal communities.



22  *(Aerial view of oil washing ashore and shorebirds attempting to feed amid the oil at*

23  *Huntington State Beach, courtesy of Getty Images)*

25  5.  As a result of the spill, and due to subsequent environmental hazards and

26  closures, Plaintiff, Charlie's Gyros, Inc. (hereinafter "Plaintiff" or "Charlie's Gyros"),

27  has suffered significant losses and damages. Charlie's Gyros is a Mediterranean/Greek

28  restaurant located in the heart of Huntington Beach, California—just a short walk from

the iconic Huntington Beach Pier. It is owned and operated by Charlie Zablah, a Huntington Beach resident and thriving businessman. Charlie opened up Charlie's Gyros in early May of 2019. After a booming first year, Charlie, like many across the country was forced to endure COVID-19 shutdowns and losses in business. Then, finally, just as things were getting back to normal, Charlie's business was once again threatened—this time by the tragic oil spill that occurred in the Pacific Ocean just roughly nine miles away from his restaurant. Sadly, as a result of this incident, Charlie's Gyros has and will continue to suffer significant loss of business, and its losses continue to amass as a result of the closures and ongoing devastation.

 

*Photo of Charlie's Gyros and its location courtesy of Yelp.com*

6.      Plaintiff and members of the proposed class have suffered and continue to suffer significant business and/or commercial losses by virtue of their proximity to the Spill, and the stigma associated with operating so close to the affected area.  This lawsuit is brought to recover business and/or commercial losses and other damages by owners/operators of local business in close proximity to the Spill.

## II.   THE PARTIES

7.     Plaintiff Charlie's Gyros, Inc. (hereinafter "Plaintiff") is a California corporation, located at 200 Main Street, 103B, Huntington Beach, California, zip code 92648, doing business as a Mediterranean/Greek restaurant, whose business has been, and will continue to be, substantially harmed by this incident.

8.     Defendant Amplify Energy Corporation is a Texas corporation with its principal place of business in Texas.  Amplify is an energy company that handles oil and gas acquisition, production, and development throughout the United States. Amplify maintains an active listing with the California Secretary of State (Corporation No. C4019166), and lists its California business address at 111 West Ocean Blvd., Suite 1240, Long Beach, CA 90802.

9.     Defendant Beta Operating Company LLC d/b/a Beta Offshore is a Delaware corporation with its principal place of business in Texas.  Beta is a subsidiary company of Amplify.  Beta operates the Elly oil processing platform located above the Beta Field oil reserve. Beta maintains an active listing with the California Secretary of State (File No. 200934210106), and lists its California business address at 111 West Ocean Blvd., Suite 1240, Long Beach, CA 90802.

10.     Defendant San Pedro Bay Pipeline Company is a California corporation with its principal place of business in California.  San Pedro Bay is a subsidiary company of Amplify.  San Pedro Bay operates the Pipeline which transports crude oil from Elly to an oil pump in Long Beach, California. San Pedro maintains an active listing with the California Secretary of State (Corporation No. C1848132), and lists its California business address at 111 West Ocean Blvd., Suite 1240, Long Beach, CA 90802.

11.     Plaintiff alleges on information and belief that Amplify, Beta, and San Pedro Bay are jointly and severally liable for each other's negligence, conduct, and wrongdoing.

12.     In addition to Amplify, Beta, and San Pedro, there are several individuals and/or entities whose true names and capacities are currently not known to Plaintiff.

Evidence may come forth that others are legally responsible and liable to Plaintiff to the extent of the liability of the named Defendants.  Plaintiff will seek leave of the Court to amend this Complaint to reflect the names and capacities of other potential Defendants when such identities and capacities become known.  Plaintiff reserves the right to amend this claim pursuant to Fed. R. Civ. P. 15(a) and Fed R. Civ. P. 21 with leave of the Court to add and amend potential defendants.

13.     At all times herein mentioned, each of the Defendants was the agent, servant, employee, joint venturer, partner and/or alter ego of each of the remaining Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, joint venture, partnership and/or alter ego.  Each Defendant has rendered substantial assistance and encouragement to the other Defendants, acting in concert knowing that its conduct was wrongful and/or unlawful, and each Defendant has ratified and approved the acts of each of the remaining Defendants.

## III.     FACTUAL ALLEGATIONS

### A.     Background

14.     Plaintiff and members of the proposed class own and operate businesses in and near the coastal cities of Huntington Beach, Newport Beach, Dana Point, and Laguna Beach, California.  These communities are popular destinations for dining, shopping and tourism, as well as a host of recreational activities such as surfing, sailing, fishing, and large-scale events such as the Pacific Airshow and the U.S. Open of Surfing, which bring millions of attendees to the beaches each year.  These communities are comprised largely of small businesses and residential homes to many families, children, and dogs who frequent the restaurants, shops, beaches, boardwalks, piers, and waters off the California coast.

**B.     The Elly Oil Processing Platform**

15.     Elly is an oil processing platform.  It was installed and began operating atop the Beta Field oil reserve in 1980.  Elly receives oil via pipeline from nearby oil wells and separates the oil from the water (thus creating crude oil).  It then transports crude oil from the Beta Field through the Pipeline to a pump station in Long Beach, California, where the oil is delivered to an oil refinery.  The Pipeline is a sixteen-inch seamless steel crude oil pipeline that was installed between Elly and Long Beach in 1980.  According to Beta's 2012 Oil Spill Prevention and Response Plan, the Pipeline was transporting roughly 4,000 barrels of oil[2] per day, at pressures ranging between 250 and 720 psi.



*Photo courtesy of L.A. Times (Elly platform)*

**C.     Initial Discovery of the Spill**

16.     Residents of Huntington Beach, California first reported odors in the air related to the Spill on the evening of Friday, October 1, 2021.  The California Governor's

---

[2] One barrel of oil is equal to 42 gallons.  The Pipeline thus pumps roughly 168,000 gallons of oil per day when functioning properly.

1  Office of Emergency Services began receiving reports in the evening of October 1, 2021

2  of oil in the water off the coast of Huntington Beach.[3]  Residents continued to notice a

3  foul smell in the air through the morning of Saturday, October 2, 2021.

4

5  **D.      Failure to Notify and Shutdown Pipeline**

6          17.      According to the Corrective Action Order (CAO) issued by the Pipeline

7  and Hazardous Materials Safety Administration (PHMSA), Office of Pipeline Safety

8  (OPS), Beta Offshore's 16-inch San Pedro Bay Pipeline ruptured at approximately 02:30

9  Pacific Daylight Time (PDT) on October 2, 2021, resulting in an uncontrolled release of

10  crude oil into the San Pedro Bay, an inlet of the Pacific Ocean.

11          18.      However, Defendants failed to notify the U.S. Coast Guard National

12  Response Center until 6:01 PDT – *over three hours later* – allowing the ruptured pipe to

13  release crude oil into the Pacific Ocean, uncontrolled, for hours.

14          19.      According to reports, the Coast Guard was notified of the oil sheen by a

15  Good Samaritan (not Amplify).  Amplify only notified the U.S. Coast Guard after its

16  company inspectors noticed oil in the water.  Amplify did not report shutting down the

17  flow of oil to the Pipeline until Saturday night, at least 24 hours after residents reported

18  smelling oil on shore.

19          20.      In the meantime, it is estimated that the spill could potentially exceed

20  131,000 gallons of crude oil, ravaging marine life and quickly approaching bustling

21  coastal towns.  The crude oil also spilled into the Talbert Marsh, an ecological reserve

22  home to dozens of species of birds.  As of the time of filing this Complaint, the oil slick

23  in the Pacific spans about thousands of acres.  Aircraft, boats, and hundreds of people

24  are supporting the clean-up efforts along the Orange County coast at this time. Unified

25

26

27  ───────────────

[3] Governor's Office of Emergency Services, Hazardous Materials Spill Report (Oct. 01, 2021) accessible at:

28  https://w3.calema.ca.gov/operational/malhaz.nsf/f1841a103c102734882563e200760c4a/f5fe18e46fd4b83f882
5876200127f5e?OpenDocument

1    Command stated that they anticipate having over 1,500 people support the clean-up

2    efforts.[4]



*Photo courtesy of KTLA / AP Photo (Talbert Marsh)*

21.    Amplify knew or should have known that oil was leaking <u>immediately</u> as the pipe was ruptured, through monitoring devices of the pipeline and product transported by the pipeline.  However, Amplify's CEO Martyn Willsher said in a news conference following the Spill that Amplify was not aware of the spill until Saturday, October 2, 2021.

22.    According to Beta's own Oil Spill Response and Prevention plan, the Pipeline would be "capable of causing significant and substantial harm to the environment in the event of a discharge of oil because of its proximity to navigable waters and adjoining shoreline areas designated as environmentally sensitive by the [Area Contingency Plan]."

---

[4] City of Huntington Beach Oil Spill Update as of October 5, 2021.

23.     Crude oil may still be continuing to spill into the Pacific Ocean.  As of the filing of this Complaint, neither Amplify nor the U.S. Coast Guard has confirmed whether the leak has been full stopped.  Amplify has reported that it has sent divers to inspect the Pipeline along the sea floor, which is about 80 to 100 feet below the surface, to assess the damage.  Despite attempts to patch the Pipeline on Saturday night, Orange County Supervisor Katrina Foley reported that oil continued to spill into the Pacific through Saturday night.



## Oil spill

Oil continues to spill from a break in the pipeline connected to Platform Elly approximately 5 miles off the coast.

Source: Beta Offshore Operating Co., LLC.                    JEFF GOERTZEN,SCNG

24.     As of the filing of this Complaint, the exact cause of the spill has not been determined.  Beta and Elly have had their share of spills and incidents over the years.

Before Amplify owned Beta and operated Elly, Elly had another oil spill which leaked 2,000 gallons of oil into the Pacific in 1999, leading to $48,000 in fines.  Beta additionally has over 100 reported incidents of non-compliance reported by the Bureau of Safety and Environmental Enforcement, which operates under the U.S. Department of the Interior according to news sources.

25.     Alternatively, the U.S. Coast Guard is investigating whether the Pipeline was damaged or broken by a yet-unknown large commercial ship that may have dropped its anchor in the wrong location.  This investigation remains ongoing and the exact cause of the Spill has not been discovered.

26.     Regardless of the exact cause of the Spill, Defendants displayed a total failure in detection, notification, and response.  According to Beta's own Oil Spill Prevention and Response Plan,[5] the Pipeline is continuously monitored by an "automated leak detection system" which includes automated monitoring and reporting to Elly, whose control room is staffed around-the-clock, and leak detection surveillance.   Further, Elly is staffed twenty-four hours per day and is connected to an Emergency Shutdown System ("ESD").  The ESD is meant to shut down the flow of oil to the Pipeline within <u>one minute</u>.  Elly has both automatic ESDs in the control room, and manual ESDs, or large red pull knobs located throughout the Elly platform.  In spite of these numerous emergency backstops, neither Amplify nor Beta has made mention of their use in stopping the Spill (*which may still be flowing into the Pacific*).  Rather, Amplify admittedly knew of the oil spill on Saturday morning, and its operators did not stop the flow of oil to the Pipeline until Saturday night.  Defendants must answer for this breach in their own operating plan that allowed up to 131,000 gallons of oil, and counting, to be dumped into the Pacific Ocean and wash ashore nearby beach cities.

---

[5] Beta Offshore Oil Spill Prevention and Response Plan (Apr. 2012), p. A-26-27, E-2, available at: https://www.bsee.gov/sites/bsee.gov/files/oil-spill-response-plan-osrp/inspection-and-enforcement/beta-operating-company-osrp-april-2012.pdf

1    **E.      Impacts on Ecology**

2         27.     The Spill has had serious and immediate impacts on the ecology and

3    communities of these Orange County beach cities.  The City of Huntington Beach was

4    forced to cancel the Pacific Airshow, one of the largest airshows in the United States,

5    which was expecting about 1.5 million attendees.  Marine life and birds are washing

6    ashore dead or covered in oil.  Beachgoers and residents have reported breathing in

7    fumes from the oil.  Businesses are forced to close and are losing business.  It has forced

8    beach and harbor closures as far south as Dana Point, expelling Orange County's

9    coastal community indefinitely.  Lobster fisherman are unable to bait and trap lobster

10   for the short harvesting season which was set to begin on October 6, 2021.

 

*Photos courtesy of Associated Press and Getty Images*

## IV.      JURISDICTION AND VENUE

         28.     This Court has federal question jurisdiction over this matter pursuant to

28 U.S.C. § 1331.  Pursuant to the Outer Shelf Continental Lands Act ("OCSLA"), 43

U.S.C. § 1331 *et seq.*, federal district courts retain jurisdiction over any case "arising out

of, or in connection with ... any operation conducted on the outer Continental Shelf

which involves exploration, development, or production of the minerals, of the subsoil

and seabed of the outer Continental Shelf, or which involves rights to such minerals."

43 U.S.C. § 1349(b)(1)(A).  Additionally, Plaintiff alleges Lost Profits and Earning

Capacity Damages Under the Federal Oil Pollution Act of 1990, §§ 1002, 1006.

29.     Elly and the Pipeline are located in federal waters under the jurisdiction of the OCSLA, and the Spill emanated from said Pipeline on federal waters.  Jurisdiction, therefore, lies with the federal district court.  *See Broussard v. John E. Graham & Sons*, 798 F. Supp. 370, 372 (M.D. La 1992) ("[I]f Plaintiffs seeks relief based on state law for an accident arising from operations conducted on the Outer Continental Shelf which involve exploration of minerals, the Plaintiff seeks relief based on federal law through the OCSLA. Therefore, a claim for relief under state law for an accident which occurs on the Outer Continental Shelf requires a federal district court to exercise federal question jurisdiction under 28 U.S.C. § 1331.").

30.     This Court also has diversity of citizenship jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2).  The federal district courts maintain original jurisdiction over class action lawsuits wherein the amount in controversy exceeds five million dollars and any member of the Class is a citizen of a state different from any Defendant in the matter.  28 U.S.C. § 1332(d)(2)(A).  Plaintiff alleges beyond the minimum five million dollars in damages as a result of the Spill.  Plaintiff, a citizen of California, is diverse from Amplify and Beta, citizens of Texas.  San Pedro Bay is a wholly owned subsidiary of Amplify.  Therefore, this matter sits properly in this Court under diversity of citizenship jurisdiction.

31.     Further, this matter is also properly venued in this Court because a substantial amount of Defendants' conduct occurred in this District, a substantial part of the property that is subject to this litigation is located in this District, and because Plaintiffs reside in and were harmed in this District.  *See* 28 U.S.C. § 1391.

## V.     CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this class action individually and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1)(A), and 23(b)(3).  This action may be brought and properly maintained as a class action because

Plaintiff satisfies the numerosity, adequacy, typicality, and commonality pre-requisites for suing as representative parties pursuant to Federal Rule of Civil Procedure 23(a).

33.    As detailed in the individual counts below, Plaintiff seeks to represent a Class defined as follows:

**All persons and entities suffering business and/or commercial losses in the California coastal cities of Huntington Beach, Newport Beach, Laguna Beach, and Dana Point, California beginning on or around October 1, 2021 and ongoing as a result of the Spill.**

Excluded from the above Class is any entity in which Defendants have a controlling interest, and officers or directors of Defendants.  Also excluded from this Class is any judge or judicial officer presiding over this matter and the members of his or her immediate family and judicial staff.

34.    The Class is ascertainable.  The Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to self-identify as having a right to recover based on the description, including, but not limited to, by reference to municipal territories and a specific time frame.  Other than by direct notice, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

35.    The members of the Class are so numerous that a joinder of all members would be impracticable.  Huntington Beach alone is home to over 10,000 businesses.[6] Other surrounding beach cities with thousands more businesses are also affected by the oil spill.  The Class is likely to exceed thousands of members.

36.    A well-defined community of interest in the questions of law or fact involving and affecting all members of the Class exists, and common questions of law or fact are substantially similar and predominate over questions that may affect only

---

[6] According to Huntington Beach's website. Accessible at: https://www.huntingtonbeachca.gov/business/

individual Class members.  This action is amenable to a class-wide calculation of damages through expert testimony applicable to anyone in the Class. The questions of law and fact common to Plaintiffs and the Class members include, among others, the following:

A.  Whether Defendants were negligent in their construction, maintenance, and operation of the Pipeline;

B.  Whether Defendants owed any duties to Class Members;

C.  Whether Defendants breached one or more duties to Class Members;

D.  Whether Defendants' actions and inactions were a substantial factor in causing harm to Class Members;

E.  Whether Defendants' Discharges caused physical injury to Class Members' businesses;

F.  Whether Defendants have created a public nuisance;

G.  Whether the nuisance Defendants have created is permanent;

H.  Whether Defendants have engaged in an ultrahazardous activity;

I.  Whether Defendants violated any California statutes, including California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*;

J.  The extent to which Class Members have been harmed by the uncontrolled release of crude oil into the Pacific Ocean by the Pipeline; and

K.  What is the proper measure of damages incurred by the Class Members.

37.  Plaintiff's claims are typical of the members of the Class.  The evidence and the legal theories regarding Defendants' alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members.

BENTLEY & MORE LLP
TELLING YOUR STORY
B&M

38.     Plaintiff will fairly and adequately protect the interests of the Class members.  Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection.  Plaintiff and its counsel intend to prosecute this action vigorously.

39.     Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law.

40.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. Because the injury suffered by any individual Class member may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiff and Class members individually to seek redress for the alleged wrongful conduct.  Even if any individual persons or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation(s) would proceed.  The class action device is preferable to individual litigation(s) because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court.

## VI.   CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Strict Liability for Ultrahazardous Activities**

**(Against Defendants Amplify, Beta, and San Pedro Bay Pipeline)**

41.     Plaintiff and Class Members incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

42.     At all times herein, Defendants were the owners and operators of the Pipeline and Elly.

43.     At all times relevant to this action, Defendants had supervision, custody, and control of the Pipeline and Elly.

44.     At all times relevant to this action, Defendants were under a continuing duty to protect the Plaintiffs and the Class from the natural consequences of an oil spill from the Pipeline.

45.     Defendants were engaged in an ultrahazardous activity by transporting and processing hazardous crude oil.

46.     Plaintiff and the Class have suffered harm as a result of the Spill emanating from Defendants' Pipeline, including but not limited to: disruption of their business, inconvenience, loss of business opportunities, lost profits, lost earnings, lost earning capacity, loss of business reputation, and other expenses.

47.     The injuries sustained by Plaintiff and the Class as a result of the Spill and its aftermath were the direct and proximate result of Defendants' activities.

48.     The harm to Plaintiff and the Class was and is the kind of harm that would be reasonably anticipated as a result of the risks created by processing and transporting hazardous crude oil, and not properly maintaining the Pipeline in its close proximity to the Huntington Beach, California shoreline.

49.     Defendants' harm to Plaintiff's economic interests was foreseeable, because the leak of hazardous crude oil would reasonably impact persons conducting business in the areas nearby the shore.

50. Defendants' actions were directly contrary to California and United States policy to preserve and protect the environment.

51. Defendants' operation of the Elly and the Pipeline and resulting Spill was and remains a substantial factor in causing the harms suffered by Plaintiff and the Class.

52. Defendants are liable to Plaintiff and Class Members for all damages arising from this ultrahazardous activity, including all compensatory damages, and punitive damages pursuant to Cal Civ. Code § 3294, and attorney's fees pursuant to Cal Civ. Code § 1021.5.

53. Defendants are liable to Plaintiff and Class Members for all damages arising from their violation of California Civil Code section 3479, California Health & Safety Code section 25510(a), and California Government Code section 8670.56.5, including compensatory and injunctive relief, punitive damages pursuant to California Civil Code section 3294, and attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

54. The wrongful acts, representations and/or omissions of Defendants, hereinabove set forth, were made, adopted, approved, authorized, endorsed and/or ratified by their officers, directors or managing agents, and were done maliciously, oppressively, fraudulently and/or with a willful and knowing disregard of the probable dangerous consequences for the health and safety of Plaintiff and their community. The officers, directors and/or managing agents of Defendants had advanced knowledge of aging infrastructure, including but not limited to: aging wells, pipelines, and/or safety systems; and/or the lack of an effective integrity management program to ensure the safety of the operation of their oil platform and pipelines. The officers, directors and/or managing agents of Defendants also had advanced knowledge that a failure to maintain, inspect, assess, replace, and/or repair infrastructure would result in the probability of a catastrophic event, which foreseeably would lead to harm and/or injuries to the health and safety of Plaintiff and its community, generally. In failing to

1   take protective measures to safeguard against the danger, the officers, directors and/or

2   managing agents of Defendants acted with a willful and/or knowing disregard of the

3   probable dangerous consequences, and/or acted with an awareness of the probable

4   dangerous consequences of their conduct and deliberately failed to avoid those

5   consequences, thereby creating a substantial risk of injury to Plaintiff and the coastal

6   communities of Huntington Beach, Newport Beach, Laguna Beach, and Dana Point

7   California. Plaintiff and Class Members are entitled to punitive and exemplary damages

8   in an amount to be ascertained, which is appropriate to punish or set an example of

9   Defendants and deter such behavior by Defendants and others in the future.

10

11   **SECOND CAUSE OF ACTION**

12   **Negligence**

13   **(Against Defendants Amplify, Beta, and San Pedro Bay Pipeline)**

14   55.   Plaintiff and Class Members incorporate by reference all allegations of the

15   preceding paragraphs as though fully set forth herein.

16   56.   Plaintiff and Class Members are individuals and entities who conduct

17   business on or within a short distance of the California coast in Orange County,

18   California.

19   57.   At all times relevant herein, Defendants owned and operated the Pipeline

20   and Elly. Defendants owe and owed a duty to Plaintiff and Class Members to use

21   reasonable care in the design, construction, operation, and/or maintenance of all

22   relevant operations and equipment.  Such reasonable care includes, but is not limited to

23   designing, constructing, operating, and/or maintaining all operations and equipment in

24   a manner compatible with the reasonable use and enjoyment of the nearby beach cities

25   and the surrounding communities, and in compliance with relevant regulations and

26   industry standards.

27   58.   Defendants also owed duties of care to Plaintiff and Class Members

28   pursuant to several statutes and/or regulations including California Civil Code section

3479 (prohibiting obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property) and California Health & Safety Code section 25510(a) (requiring handlers of hazardous material to immediately report the release or threatened release thereof to the unified program agency), and California Government Code section 8670.56.5 (imposing liability for any damages or injury resulting from an oil spill). Plaintiff and Class Members, as property owners or lessors affected by Defendants' violation of the above statutes, are within the class of persons these statutes are designed to protect.

59. Defendants breached this duty to Plaintiff and the Class by negligently, wantonly, carelessly, and/or recklessly designing, constructing, operating, and maintaining the Pipeline; failing to implement reasonable safety and spill prevention practices; failing to conduct reasonable safety and spill inspections; and failing to promptly contain the Spill. These breaches caused the Spill, which led to Plaintiff and Class Members' clients and customers to be displaced. As a foreseeable result, Plaintiff and Class Members have been unable to conduct business in the affected area and surrounding communities, or have seen a substantial decrease in business transactions originating in the affected areas.

60. Defendants knew, or should have known that their design, construction, operation, and/or maintenance could result in the Spill, and that the foregoing could and would cause significant economic harm to businesses in the surrounding communities.

61. As a direct and proximate result of Defendants' negligence and statutory violations in designing, constructing, operating, and/or maintaining the Elly and the Pipeline, Plaintiff's and Class Members' properties were, and are, being physically invaded by Defendants' crude oil.

62. As a direct and proximate result of Defendants' negligence and statutory violations, Plaintiff and Class Members suffered property damages as alleged herein,

1   including physical injury to their property; as corroborated by the presence of odor and

2   crude oil tracked onto their properties and chattels.

3       63.    As a direct and proximate result of Defendants' negligence and statutory

4   violations, Plaintiff and Class Members suffered and will continue to suffer the loss of

5   the quiet use and enjoyment of their properties as well as enjoyment of public

6   properties located in the Huntington Beach, Newport Beach, Laguna Beach, and Dana

7   Point vicinities.

8       64.    As a direct and proximate result of Defendants' negligence and statutory

9   violations, Plaintiff and Class Members have suffered legal injury and damages, in an

10  amount to be proven at trial, including, but not limited to, property damage,

11  diminution of value of real estate, the cost to repair the damage and restore the

12  property to its condition prior to the Spill, plus the value of their lost use of the property

13  as a result of Defendants' negligence.

14      65.    Defendants are liable to Plaintiff and Class Members for all damages

15  arising from their negligence, as well as their violation of Cal Civ. Code § 3479, Cal.

16  Health & Safety Code § 25510(a), and Cal. Gov. Code § 8670.56.5, including

17  compensatory and injunctive relief, punitive damages pursuant to Cal. Civ. Code §

18  3294, and attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5.

19      66.    Defendants were and are in a special relationship to this Class of property

20  owners. Defendants operated Elly and the Pipeline in such close geographical proximity

21  to the Class, and with knowledge of the residential properties in close proximity to the

22  Pipeline. Defendants' operation of the Pipeline was intended to and did directly affect

23  the Class.

24      67.    Due to the geographical proximity between the Pipeline and the Class, the

25  harm to the Class from a massive Spill was clearly foreseeable.

26      68.    The Class suffered injury, which was plainly caused by the Spill.

27      69.    There is moral blame attached to the Defendants as a result of the injuries

28  to the Class and the massive damage to the environment.

70.     Public policy supports also finding a duty of care in this circumstance, due to the Defendants' violation of California Civil Code section 3479, California Health & Safety Code section 25510(a), and California Government Code section 8670.56.5, and Defendants' engagement in an ultrahazardous activity.

### THIRD CAUSE OF ACTION

### Trespass

### (Against Defendants Amplify, Beta, and San Pedro Bay Pipeline)

71.     Plaintiff and Class Members incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

72.     Plaintiff and Class Members have now and had at the time of the Spill a possessory interest in their real, personal, and business property, and bring this cause of action on behalf of themselves and all other Class members with a possessory ownership or leasehold interest in property.

73.     Defendants caused a trespass by discharging through the Spill crude oil and other potential unknown chemicals and matter; outside the Pipeline and beyond the boundary of Elly in such a manner that it was reasonably foreseeable that the pollutants would, in due course, invade Plaintiffs' and Class Members' real property and cause physical injury to that property.

74.     The Spill invaded the property of Plaintiffs and the Class, and interfered with their possessory interests of that property.

75.     The Spill invaded the real property of Plaintiffs and the Class caused physical damage to their property by casting over and infusing their real property with a distinct smell and causing crude oil to be tracked onto their property and chattels from the Pacific Ocean and beach.

76.     The Spill caused Defendants to enter, invade, and intrude on the real properties of Plaintiffs and the Class Members without their privilege, permission, consent, authorization, invitation, or justification.

77.     Defendants had a duty to use reasonable care not to enter, invade, or intrude on the real property of Plaintiffs and the members of the proposed Class. Defendants also owed a duty to Plaintiffs and members of the Class to exercise reasonable care in the construction, maintenance, and operation of Elly and the Pipeline because of the close proximity to coastal cities.

78.     Defendants had a heightened duty of care to Plaintiff and the Class because of the great danger associated with processing and transporting crude oil. Defendants' maintenance and operation of Elly and the Pipeline was inherently dangerous, posed a significant risk of harm to Plaintiffs and members of the Class and their property, and constituted an ultrahazardous activity.

79.     Defendants breached the duty they owed to Plaintiffs and members of the Class when they failed to exercise reasonable care in the construction, maintenance, and operation of the Pipeline, which conduct resulted in entry, intrusion, or invasion of Plaintiff's and Class Members' real properties.

80.     Defendants knew or should have known that their conduct and the ongoing operation and maintenance of the Pipeline would foreseeably result in the disastrous Spill, causing damage to the real properties and economic interests of persons in the area affected by the Spill. As a direct and proximate result of Defendants' trespass, Plaintiff and Class Members have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, property damage, diminution of value of real estate, the cost to repair the damage and restore the property to its pre-trespass condition, the costs of recovering possession of the property, plus the value of their lost use of the property as a result of all trespass and for Defendants' ongoing trespass, if any, and attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5.

81.     Defendants' wanton or reckless conduct, as described herein, entitles Plaintiff and Class members to punitive damages.

## FOURTH CAUSE OF ACTION

### Private Nuisance

### (Against Defendants Amplify, Beta, and San Pedro Bay Pipeline)

82.     Plaintiff and Class Members incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

83.     The Spill and Defendants' and operation of Elly and the Pipeline have created a condition that is harmful to health and interferes with the comfortable enjoyment of life and property, and where another catastrophic discharge is likely to happen at any moment. As a result of Defendants' actions and inactions, Plaintiff and Class Members have suffered a permanent loss of use and enjoyment of their property.

84.     Defendants' operation of the Pipeline is a condition that would reasonably annoy and disturb an ordinary person, as shown, for example, by the major event cancellations, business closures, community outrage in response to the Spill, and the nationwide interest in the impact of the Spill on the environment.

85.     The seriousness and gravity of the harm associated with the Spill and continued operation of the Pipeline outweigh the public benefit of Defendants' conduct. There is no social utility associated with the release of hundreds of thousands of gallons of crude oil into the Pacific Ocean and onto nearby coastal communities.

86.     Plaintiff and the Class suffered and continue to suffer a harm and injury to their residential properties to which they did not consent and which is different from the type of harm suffered by the general public.

87.     Defendants' conduct was a substantial factor in causing harm to Plaintiff and the Class to suffer and to continue to suffer economic harm, injury, and losses, including injury to property.

88.     The Spill and Defendants' operation of Elly and the Pipeline have also created an ongoing condition that is harmful to health and interferes with the comfortable enjoyment of life and property.  Absent abatement, Defendants' actions and inactions will likely soon result in another catastrophic discharge.  As a result of

1  Defendants' actions and inactions, Plaintiff and Class Members have suffered a loss of
2  use and enjoyment of their property.

3       89.     Defendants' operation of the Pipeline is a condition that would reasonably
4  annoy and disturb an ordinary person, as shown, for example, by the major event
5  cancellations, business closures, community outrage in response to the Spill, and the
6  nationwide interest in the impact of the Spill on the environment.

7       90.     The seriousness and gravity of the harm associated with the Spill and
8  continued operation of the Pipeline outweigh the public benefit of Defendants' conduct.
9  There is no social utility associated with the release of hundreds of thousands of gallons
10 of crude oil into the Pacific Ocean and onto nearby coastal communities.

11      91.     Plaintiffs and the Class have suffered and, absent abatement, will continue
12 to suffer a harm and injury to their residential properties to which they did not consent,
13 and which is different from the type of harm suffered by the general public.

14      92.     The Spill has also affected the public at large, causing massive
15 environmental damage to the Orange County area and the State of California.

16      93.     Defendants' conduct was a substantial factor in causing harm to Plaintiff
17 and the Class to suffer and to continue to suffer economic harm, injury, and losses,
18 including injury to property.  Plaintiff and the Class are entitled to damages for all such
19 past and present injuries.

20      94.     The contamination described herein constitutes a nuisance within the
21 meaning of Section 3479 of the California Civil Code.

22      95.     Plaintiff and the Class are informed and believe, and on that basis allege,
23 that the nuisance is permanent and unabatable.

24
25
26
27
28

COMPLAINT AND REQUEST FOR JURY TRIAL

## FIFTH CAUSE OF ACTION

### Public Nuisance

### (Against Defendants Amplify, Beta, and San Pedro Bay Pipeline)

96.     Plaintiff and Class Members incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

97.     The Spill and Defendants' operation of Elly and the Pipeline have created a condition that is harmful to health and interferes with the comfortable enjoyment of life and property, and where another catastrophic discharge is likely to happen at any moment.  As a result of Defendants' actions and inactions, Plaintiff and Class Members have suffered a permanent loss of use and enjoyment of their property.

98.     Defendants' operation of the Pipeline is a condition that would reasonably annoy and disturb an ordinary person, as shown, for example, by the major event cancellations, business closures, community outrage in response to the Spill, and the nationwide interest in the impact of the Spill on the environment.

99.     The seriousness and gravity of the harm associated with the Spill and continued operation of the Pipeline outweigh the public benefit of Defendants' conduct. There is no social utility associated with the release of hundreds of thousands of gallons of crude oil into the Pacific Ocean and onto nearby coastal communities.

100.     Plaintiff and the Class suffered and continue to suffer a harm and injury to their residential properties to which they did not consent and which is different from the type of harm suffered by the general public.

101.     The Spill also affects and continues to affect the public at large, causing massive environmental damage to the Orange County area and the State of California.

102.     Defendants' conduct is a substantial factor in causing Plaintiff and the Class to suffer and to continue to suffer economic harm, injury, and losses, including injury to property, loss of use and enjoyment of their property, and diminution in property values. Plaintiffs and the Class are entitled to damages for all such past, present, and future injuries.

103.     The Spill and Defendants' operation of the Facility have also created an ongoing condition that is harmful to health and interferes with the comfortable enjoyment of life and property.  Absent abatement, Defendants' actions and inactions will likely soon result in another catastrophic discharge.  As a result of Defendants' actions and inactions, Plaintiff and Class Members have suffered a loss of use and enjoyment of their property.

104.     Defendants' operation of the Pipeline is a condition that would reasonably annoy and disturb an ordinary person, as shown, for example, by the major event cancellations, business closures, community outrage in response to the Spill, and the nationwide interest in the impact of the Spill on the environment.

105.     The seriousness and gravity of the harm associated with the Spill and continued operation of the Pipeline outweigh the public benefit of Defendants' conduct. There is no social utility associated with the release of hundreds of thousands of gallons of crude oil into the Pacific Ocean and onto nearby coastal communities.

106.     Plaintiff and Class Members have suffered and absent abatement will continue to suffer a harm and injury to their residential properties to which they did not consent, and which is different from the type of harm suffered by the general public.

107.     The Spill has also affected the public at large, causing massive environmental damage to the Orange County area and the State of California.

108.     Defendants' conduct is a substantial factor in causing harm to Plaintiff and Class Members to suffer and to continue to suffer economic harm, injury, and losses, including injury to property, loss of use and enjoyment of property, and diminution in property values.  Plaintiff and Class Members are entitled to damages for all such past and present injuries.

109.     The contamination described herein constitutes a nuisance within the meaning of Section 3479 of the California Civil Code.

110.     Plaintiff and Class Members are informed and believe, and on that basis allege, that the nuisance is continuing and abatable.

### SIXTH CAUSE OF ACTION

**Violations of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, et seq.**

**(Against Defendants Amplify, Beta, and San Pedro Bay Pipeline)**

111.    Plaintiff and Class Members incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

112.    Defendants have engaged in and continue to engage in unfair competition in violation of California's Unfair Competition Law ("UCL").

113.    Defendants' conduct constitutes unlawful and unfair business practices within the meaning of the UCL.

114.    Defendants' conduct amounts to unlawful conduct because their conduct constitutes common law negligence, trespass, and nuisance, and they violated Civ. Code § 3479 (prohibiting obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property), Cal. Health & Safety Code § 25510(a) (requiring handlers of hazardous material to immediately report the release or threatened release thereof to the unified program agency), and California Government Code section 8670.56.5 (imposing liability for any damages or injury resulting from an oil spill)

115.    Defendants' conduct amounts to "unfair" business practices because the policies underlying the statutes and the common law are implicated by Defendants' misconduct. Defendants' practices offend established public policies, are dishonest, unfair, and do not comport with standards of care embodied in various statutes and common laws, including negligence.  The impact of Defendants' practices on Plaintiffs and the Class Members, and the environment has been sustained and substantial, and is in no way mitigated by any justifications, reason, or motives. Defendants' conduct relating to the Spill has no utility when compared to the harm done to Plaintiffs and members of the Class.

116.    As a direct and proximate result of Defendants' unfair and unlawful methods of competition, acts or practices, Plaintiff and Class Members have sustained injury to property and are entitled to injunctive relief pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

## SEVENTH CAUSE OF ACTION

**Lost Profits and Earning Capacity Damages Under Federal Oil Pollution Act of 1990, §§ 1002, 1006**

**(Against Defendants Amplify, Beta, and San Pedro Bay Pipeline)**

117.    Plaintiff and Class Members incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

118.    At all times herein, Defendants were the owners and operators of the Pipeline and Elly.

119.    The Pipeline constitutes a "facility" under the Federal Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701(9), which defines "facility" as "any structure, group of structures, equipment, or device (other than a vessel) which is used for…exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil," including pipelines.

120.    The Spill from the Pipeline constitutes a "discharge" under the OPA, which defines "discharge" as "any emission (other than natural seepage), intentional or unintentional, and includes, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying, or dumping." 33 U.S.C. § 2701(7).

121.    The oil discharged by the Pipeline constitutes "oil" under the OPA, which defines "oil" as "oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil …." 33 U.S.C. § 2701(23).

122.    The waters of the Pacific Ocean off the Southern California coast constitute "navigable waters" under the OPA, which defines "navigable waters" as "the waters of the United States, including the territorial sea." 33 U.S.C. § 2701(21).

123.     Defendants Amplify, Beta, and San Pedro Bay each constitutes a "responsible party" under the OPA, which defines "responsible party" as, in pertinent part, "In the case of a pipeline, any person owning or operating the pipeline."  33 U.S.C. § 2701(32)(F).

124.     By virtue of the acts and omissions alleged in this Complaint, culminating in the Pipeline discharging up to 131,000 gallons of oil in the Pacific Ocean, causing it to wash on shore in Orange County, Defendants have caused the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources.

125.     Under the OPA, Defendants are responsible for a facility (the Pipeline) from which oil was discharged into or on the navigable waters or adjoining shorelines of Orange County, California, and Defendants are thus strictly liable to Plaintiffs and Class Members for the resulting damages, including, but not limited to, damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources. 33 U.S.C §§ 2702(a)-(c).

126.     By virtue of the acts and omissions alleged in this Complaint, Defendants are jointly and severally liable and/or vicariously liable for each other's acts and omissions, and consequently for the mentioned damages under the OPA.

## VII.     PRAYER FOR RELIEF

Plaintiff individually and on behalf of all others similarly situated, request judgment against Defendants as follows:

A.     For an order certifying the Class and appointing Plaintiff as representative of the Class and appointing the undersigned as Class Counsel;

B.     For an order enjoining Defendants to stop trespassing on the properties of the Plaintiff and the Class, to remove the contaminants from their property interests and assets;

1       C.     For all recoverable compensatory, statutory, and other damages sustained

2  by Plaintiff and the Class, including disgorgement, unjust enrichment, and all other

3  relief allowed under applicable laws;

4       D.     For costs;

5       E.     For both pre-judgment and post-judgment interest on any amounts

6  awarded at the highest allowable rate;

7       F.     For appropriate injunctive relief, including public injunctive relief;

8       G.     For damages insofar as they are allowed by applicable laws;

9       H.     For payment of attorneys' fees as may be allowable under applicable law;

10       I.     For payment of expert fees as may be allowable under applicable law;

11       J.     For exemplary or punitive damages under Cal. Civ. Code Section 3294 for

12  the oppression, fraud, or malice alleged above; and

13       K.     For such other and further relief including declaratory relief, as the Court

14  may deem just and proper.

15  Dated: October 20, 2021          BENTLEY & MORE LLP

16

17                               /s/ Gregory L. Bentley

18                               GREGORY L. BENTLEY
                             MATTHEW W. CLARK

19                               JAIMI M. GROOTHUIS

20                               *Attorneys for Plaintiff*

21

22

23

24

25

26

27

28

COMPLAINT AND REQUEST FOR JURY TRIAL

1

## VIII.   <u>REQUEST FOR JURY TRIAL</u>

2

3       Plaintiff, individually, and on behalf of the Class of others similarly situated,

4  hereby requests a jury trial on all causes of action and issues so triable.

5

6  Dated: October 20, 2021                    BENTLEY & MORE LLP

7

8                                             <u>/s/ Gregory L. Bentley</u>

9                                             GREGORY L. BENTLEY

10                                            MATTHEW W. CLARK

11                                            JAIMI M. GROOTHUIS
                                              *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT AND REQUEST FOR JURY TRIAL